**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                       )
COREY McFADDEN,                        )
                                       )
           Plaintiff,          )
                                       )
      v.                              )      Civil Action No. 12-940 (RBW)
                                       )
WASHINGTON METROPOLITAN                )
AREA TRANSIT AUTHORITY, et al.,        )
                                       )
           Defendants.         )
_____)

**MEMORANDUM OPINION**

Plaintiff Corey McFadden, proceeding pro se, brings this action against his employer, the

Washington Metropolitan Area Transit Authority ("WMATA"), and three WMATA employees,

Lisa Cooper Lucas, Ron A. Kelley, and John Coleman (the "individual defendants"), asserting

claims for disability discrimination, retaliation, and defamation.  See Complaint ("Compl.") ¶¶

79-119.  Currently before the Court is the Defendants' Motion to Dismiss in Part.[1]  Upon careful

consideration of the parties' submissions,[2] the Court concludes for the following reasons that the

defendants' motion must be granted in part and denied in part.

---

[1] Also before the Court is the Plaintiff's Motion for Summary Judgment, which consists of two sentences and seeks summary judgment based on the erroneous assertion that the defendants have conceded the plaintiff's allegations. The Court will summarily deny this motion as premature and meritless.

[2] In addition to those already identified, the Court considered the following filings in rendering its decision: the Defendants' Memorandum of Points and Authorities in Support of their Motions to Dismiss in Part ("Defs.' Mem."); the Plaintiff's Response to Defendants' Motion to Dismiss in Part ("Pl.'s Opp'n"); the Defendants' Reply to Plaintiff's Response/Opposition to Defendants' Motion to Dismiss in Part ("Defs.' Reply"); the Plaintiff's Reply to Defendants' Reply to Plaintiff's Response/Opposition to Defendants' Motion to Dismiss in Part ("Pl.'s Reply"); and the Defendants' Reply to Plaintiff's Sur-reply to Defendants' Reply to Plaintiff's Response/Opposition to Defendants' Motion to Dismiss in Part ("Defs.' Surreply").

## I. BACKGROUND

The complaint contains the following allegations pertinent to the defendants' motion. WMATA hired the plaintiff as a bus mechanic in October 2008.  Compl. ¶ 11.  In June 2009, the plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and prescribed the drug Adderall "to increase his focus and concentration."  Id. ¶ 14.  Pursuant to a WMATA policy forbidding employees in "safety-sensitive positions" from using amphetamines, the defendants prohibited the plaintiff from working as a bus mechanic while taking Adderall, and suspended his employment after he tested positive for use of the drug.  See id. ¶¶ 22-77. Subsequently, at a grievance hearing before WMATA's Joint Labor Management Committee in March 2011 ("Labor-Management Hearing"), the individual defendants made statements, prior to the plaintiff's arrival at the hearing, indicating that the plaintiff was a drug addict who was abusing Adderall.  See id. ¶¶ 72-74.  WMATA later fired the plaintiff for violating the company's substance abuse policy, but then reinstated his employment pursuant to an agreement with the Amalgamated Transit Union, Local 689, of which the plaintiff is a member.  Id. ¶¶ 75, 77, 16.

The plaintiff instituted this action on June 8, 2012.  His complaint contains three counts. Count I asserts a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701 (2012), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102(2)(B) (2012), alleging that the defendants failed to provide the plaintiff with a reasonable accommodation for his ADHD and otherwise discriminated against him based on his disability.  See id. ¶¶ 79-96.  Count II asserts a retaliation claim under the Rehabilitation Act and the ADA, alleging that the defendants subjected the plaintiff to adverse employment actions as a result of his filing of a charge with the United States Equal Employment Opportunity Commission.  See id. ¶¶ 97-104.  And Count III

asserts a defamation claim based on the individual defendants' alleged statements about the

plaintiff's drug use at the Labor-Management Hearing in March 2011.  <u>See</u> <u>id.</u> ¶¶ 105-119.  The

plaintiff seeks compensatory and punitive damages, among other forms of relief.  <u>Id.</u> ¶¶ 120,

122.

      The defendants have now moved for partial dismissal of the complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Specifically, WMATA moves to

dismiss the ADA, defamation, and punitive damages claims against it, and the individual

defendants have moved to dismiss all claims against them.  Defs.' Mem. at 7.

## II.  STANDARDS OF REVIEW

      Rule 12(b)(1) allows a party to move to dismiss "for lack of subject-matter jurisdiction."

Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the

plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has

subject matter jurisdiction."  <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, 310 F. Supp. 2d 172,

176 (D.D.C. 2004); <u>see</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  A court

considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in

the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all

inferences that can be derived from the facts alleged.'"  <u>Am. Nat'l Ins. Co. v. FDIC</u>, 642 F.3d

1137, 1139 (D.C. Cir. 2011) (citation omitted).

      A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A plaintiff receives the "benefit of all

inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F. 3d

1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 556). While the Court must "assume [the] veracity" of any "well-pleaded

factual allegations" in the complaint and draw all inferences in the plaintiff's favor, conclusory

allegations "are not entitled to the assumption of truth." Id. at 679.

   "A pro se complaint," such as the plaintiff's, "'must be held to less stringent standards

than formal pleadings drafted by lawyers.'" Atherton v. D.C. Office of the Mayor, 567 F.3d 672,

681-82 (D.C. Cir. 2009) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "But even a pro

se complainant must plead 'factual matter' that permits the court to infer 'more than the mere

possibility of misconduct.'" Id. (quoting Iqbal, 556 U.S. at 678-79).

### III. ANALYSIS

**A.    The Plaintiff's ADA Claims Against WMATA**

   WMATA moves to dismiss the ADA claims against it on the basis of Eleventh

Amendment immunity. Defs.' Mem. at 2. "Under the Eleventh Amendment, 'an unconsenting

State is immune from suits brought in federal courts by her own citizens as well as by citizens of

another State.'" Jones v. WMATA, 205 F.3d 428, 432 (D.C. Cir. 2000) (citation omitted).

"WMATA, a mass transit system for the District of Columbia and surrounding suburban areas,

was created by an interstate compact among Maryland, Virginia, and the District of Columbia,

and enjoys the Eleventh Amendment immunity of the two signatory states." Barbour v.

WMATA, 374 F.3d 1161, 1163 (D.C. Cir. 2004). Although Title I of the ADA purports to

abrogate states' Eleventh Amendment immunity by authorizing private suits for money damages

against states for disability discrimination in employment, the Supreme Court has held that this attempted abrogation was invalid.  See Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001).  Thus, as several other members of this Court have likewise concluded, WMATA is immune from private employment discrimination claims seeking money damages under the ADA.[3]  Bailey v. WMATA, 696 F. Supp. 2d 68, 71 (D.D.C. 2010); Hopps v. WMATA, 480 F. Supp. 2d 243, 256 (D.D.C. 2007).  The Court therefore will grant WMATA's motion to dismiss the plaintiff's ADA claim against it.

**B.      The Plaintiff's ADA and Rehabilitation Act Claims Against the Individual Defendants**

The individual defendants move to dismiss the ADA and Rehabilitation Act claims against them on the ground that those statutes do not authorize individual liability.  Defs.' Mem. 2-4.  The plaintiff does not respond to this argument, so it is conceded.  See Lewis v. Dist. of Columbia No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (citation omitted)).  In any event, even without this concession, the defendants are correct on the merits: "there is no individual liability under the ADA or the Rehabilitation Act."  Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law, 570 F. Supp. 2d 1, 8 n.8 (D.D.C. 2008) (collecting cases).  Accordingly, the Court will grant dismissal of the plaintiff's ADA and Rehabilitation Act claims against the individual defendants.

---

[3] The plaintiff cites the Circuit's decision in Barbour in support of his proposition that WMATA has waived its immunity for ADA claims, see Pl.'s Reply at 4, but that case concerned the Rehabilitation Act, not the ADA, and thus does not help the plaintiff, see Barbour, 374 F.3d at 1170 ("We hold that WMATA waived its immunity from suit under the Rehabilitation Act by accepting federal transportation funds, and that Congress had authority under the Spending Clause to condition the receipt of federal funds on such a waiver." (emphasis added)).

**C.      The Plaintiff's Defamation Claim Against the Individual Defendants**

The individual defendants move to dismiss the plaintiff's common law defamation claim on the grounds that it is time-barred; that they are immune from the claim pursuant to the WMATA Compact; and that it fails on the merits.  <u>See</u> Defs.' Mem. at 4-5; Defs.' Reply at 3-6. The Court will address each argument in turn.

**1.      Timeliness**

Under District of Columbia law, "[a] claim for defamation must be filed within one year of accrual of the cause of action."  <u>Maupin v. Haylock</u>, 931 A.2d 1039, 1041-42 (D.C. 2007); D.C. Code § 12-301(4) (2012).  The parties acknowledge that this is the applicable limitation period for the plaintiff's defamation claim, but dispute when the claim accrued.  The individual defendants assert that the claim accrued in March 2011 when they allegedly made the defamatory statements at the Labor-Management Hearing, and that the claim is time-barred since the plaintiff filed suit more than a year later in June 2012.  Defs.' Mem. at 5.  The plaintiff responds that he did not learn of the alleged defamatory statements "until he was given a copy of the [hearing] transcripts on or about July 5, 2011," and that this should be the accrual date for his defamation claim, thus making his claim timely.  Pl.'s Opp'n at 3.

"As a general rule, '[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.'"  <u>Mullin v. Wash. Free Weekly, Inc.</u>, 785 A.2d 296, 298 (D.C. 2001) (citation omitted).  Consistent with this rule, a defamation claim typically accrues, "and the one-year limitations period beg[ins] to run, at the time the allegedly defamatory statement [is] published."  <u>Maupin</u>, 931 A.2d at 1042. "But when 'the relationship between the fact of injury and the alleged tortious conduct [is] obscure,'" the D.C. Court of Appeals has applied the so-called "discovery rule," which provides

that "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing."  Id. at 298-99 (citation omitted).  The plaintiff argues that the discovery rule applies to his defamation claim.  Pl.'s Reply at 6.

As best as the Court can determine, whether and to what extent the discovery rule applies to defamation claims is an unsettled question of District of Columbia law.  One point is clear, however: the discovery rule does not apply when the alleged defamatory statements are "published by a mass media defendant," the rationale being that "the fact of the injury is readily ascertainable upon publication because the harm occurs with publication."  Oparaugo v. Watts, 884 A.2d 63, 72 (D.C. 2005) (citing Mullin, 785 A.2d at 299 & n.5).  But outside the mass media context, the D.C. Court of Appeals has expressly declined to decide whether the discovery rule applies to defamation claims.  See Maupin, 931 A.2d at 1041 (noting that the question is unsettled and proceeding to resolve the appeal "by assuming without deciding that the discovery rule applies in at least some defamation cases").  The court has nonetheless suggested that "application of the discovery rule might be justified" in some defamation cases, including when "the defamatory statement [is] inherently undiscoverable, because it was published secretly and/or the defendant took steps to prevent the plaintiff from uncovering the statement, or in the case of circulars, newsletters or even newspapers addressed to a specialized readership."  Mullin, 785 A.2d at 299 n.5 (citing Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 334 N.E.2d 160, 164 (Ill. 1975) (applying the discovery rule to a defamation claim concerning statements within a credit report)).

When faced with an undecided issue of state law, a federal court "must resolve the issue according to 'the rule that [it] believe[s] []the state's highest court, from all that is known about its methods of reaching decisions and the authorities it tends to rely on, is likely to adopt in the

not too distant future.'" <u>Davis v. Grant Park Nursing Home LP</u>, 639 F. Supp. 2d 60, 69 (D.D.C.

2009) (quoting 19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, <u>Federal Practice

and Procedure</u> § 4507 at 200 (2d ed. 1996)).  Here, the Court anticipates that the D.C. Court of

Appeals would apply the discovery rule based on the facts of this case.  The alleged defamatory

statements at issue here were not published "by a mass media" outlet, but rather were made at a

grievance hearing in the presence of a group comprised of labor and management officials at

WMATA—a limited audience akin to the "specialized readership" hypothesized by the D.C.

Court of Appeals in <u>Mullin</u>.  In addition, the statements were allegedly made prior to the

plaintiff's arrival at the hearing and he did not learn of them until July 5, 2011, when he

reviewed the transcript for the hearing.  <u>See</u> Compl. ¶¶ 72-74; Pl.'s Opp'n at 3.  Thus, this case is

"readily distinguished from those [cases] involving alleged defamations through so-called mass-

media publication," where "the publication has been for public attention and knowledge and the

person commented on, if only in his role as a member of the public, has had access to such

published information."  <u>Tom Oleskar's</u>, 334 N.E.2d at 164, <u>cited in</u> <u>Mullin</u>, 784 A.2d at 299 n.5.

Given its favorable citation to the case in <u>Mullin</u>, this Court expects that the D.C. Court of

Appeals would adopt the reasoning of <u>Tom Oleskar's</u> and decline "to follow an abstract and

mechanical reasoning in deciding when the cause of action accrued" in this case.  <u>Id.</u>  Further

bolstering this conclusion is the fact that the Maryland Court of Appeals has applied the

discovery rule to defamation claims outside the mass media context.  <u>See</u> <u>Sears, Roebuck & Co.

v. Ulman</u>, 412 A.2d 1240, 1242 (Md. 1980); <u>Shepard v. Nabb</u>, 581 A.2d 839, 844 (Md. Ct. Spec.

App. 1990).  This point is significant because the "'District [of Columbia] derives its common

law from Maryland and decisions of Maryland courts on questions of common law are

authoritative in the absence of District authority.'"  <u>Solid Rock Church, Disciples of Christ v.

Friendship Pub. Charter Sch., Inc., 925 A.2d 554, 561 (D.C. 2007) (citation omitted). Consequently, the Court deems it appropriate to apply the discovery rule to the plaintiff's defamation claim.

Having reached this conclusion, the Court cannot grant dismissal of the plaintiff's defamation claim as time-barred.  "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred."  Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  And here, the plaintiff's defamation claim is not conclusively time-barred as discerned from the face of the complaint.  Rather, applying the discovery rule, issues of fact exist concerning when the plaintiff knew or should have known that the individual defendants' alleged defamatory statements caused his purported injury.  Discovery is necessary to yield answers to these questions, and so dismissal under 12(b)(6) is inappropriate.

The defendants contend, without citing any authority, that knowledge of the alleged defamatory statements can be imputed to the plaintiff effective March 2011 because his union representatives heard the statements at the March 2011 Labor-Management Hearing and they were the plaintiff's "agents."  Defs.' Reply at 4.  But even assuming this argument correctly states the law, "the existence of an agency relationship is ordinarily a question of fact which, depending upon the existence of any disputed issues of material fact, is more appropriately addressed on summary judgment or at trial."  Jackson v. Culinary Sch. of Wash., 788 F. Supp. 1233, 1242 (D.D.C. 1992); see Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1097 (D.C. 2008).  And the complaint in this case—the focal point of the Court's review on a 12(b)(6) motion—does not concede the existence of agency relationship between the plaintiff and his

union representatives.  The agency question thus is a factual issue ill-suited for resolution at the
motion to dismiss stage.

Accordingly, the Court declines to dismiss the plaintiff's defamation claim as untimely.

**2.      Immunity under the WMATA Compact**

The individual defendants next argue that they are immune from the plaintiff's
defamation claim pursuant to the interstate compact creating WMATA.  Defs.' Mem. at 4.
"Section 80 of the Compact waives [WMATA's sovereign] immunity for torts 'committed in the
conduct of any proprietary function,' while retaining immunity for torts committed by its agents
'in the performance of a governmental function.'"  Beebe v. WMATA, 129 F.3d 1283, 1287
(D.C. Cir. 1997) (quoting D.C. Code § 1-2431(80)).  Section 80 of the WMATA Compact also
"provides that the 'exclusive remedy' for any action for which WMATA is liable 'shall be by
suit against the Authority'"; thus, "for torts committed in the course of proprietary or ministerial
functions, WMATA is liable and its employees immune."  Id. at 1288 (quoting D.C. Code § 1-
2431(80)).  Further refining this rule, the District of Columbia Circuit in Beebe held that
WMATA employees "enjoy absolute immunity from state-law tort actions when the conduct at
issue falls 'within the scope of their official duties and the conduct is discretionary in nature.'"
Id. at 1289 (quoting Westfall v. Erwin, 484 U.S. 292, 297-98 (1988)).

In seeking to invoke immunity under the WMATA Compact here, the individual
defendants merely cite the foregoing legal principles and proclaim victory.  See Defs.' Mem. at
4-5.  They do not explain why their alleged defamatory statements fall within the WMATA
Compact's grant of immunity, offering no argument on key issues such as whether their
challenged conduct implicated non-immune "proprietary" functions, or immune "governmental"
functions.  See Beebe, 129 F.3d at 1287-89 (discussing the relevant standards).  Because "the

burden of establishing immunity [is] on the official," id. at 1289, and because the individual

defendants have utterly failed to carry that burden, the Court declines to dismiss the plaintiff's

defamation claim on immunity grounds.

**3.      Merits**

The individual defendants also assert that the plaintiff's defamation claim fails on the

merits.  See Defs.' Reply at 3-6.  To prevail on a defamation claim under District of Columbia

law, a plaintiff must

> prove four elements: (1) that the defendant made a false and defamatory statement
> concerning the plaintiff; (2) that the defendant published the statement without
> privilege to a third party; (3) that the defendant's fault in publishing the statement
> amounted to at least negligence; and (4) either that the statement was actionable
> as a matter of law irrespective of special harm or that its publication caused the
> plaintiff special harm.

Oparaugo, 884 A.2d at 76 (quotation marks and citation omitted).  Focusing on this second

element, the individual defendants argue that the plaintiff has failed to show publication to a

third party because their alleged defamatory statements were only made to the plaintiff's

"agents" (i.e., his union representatives), who, the individual defendants maintain, do not qualify

as a "third parties."  Defs.' Reply at 3.  As noted above, however, the existence of an agency

relationship between the plaintiff and his union representatives is a factual question prematurely

raised at this stage of the proceedings, and there is no concession that such an agency

relationship existed in the complaint.  In any event, contrary to the individual defendants'

assertion, the complaint does not indicate that the alleged defamatory statements were only

published to the plaintiff's union representatives; it instead alleges that the statements were

"published to others," without further elaboration.  Compl. ¶¶ 115-17.

The individual defendants next assert that their alleged defamatory statements were

"absolutely privileged."  Defs.' Reply at 4; Defs.' Surreply at 4.  This is so, in their view,

because the statements were made pursuant to the terms of a collective bargaining agreement to which the plaintiff was a party, and, by entering into the agreement, the plaintiff consented to the statements' publication.  Defs.' Reply at 4-6.

The D.C. Court of Appeals has indeed declared that "[c]onsent is an absolute defense to a claim of defamation," and thus "[a] person who consents to the publication of comments about himself has no cause of action for defamation."  Farrington v. Bureau of Nat. Affairs, Inc., 596 A.2d 58, 59 (D.C. 1991).  In Farrington, the plaintiff was a party to a collective bargaining agreement which required his employer to prepare performance evaluations for each of its employees.  Id.  He brought a defamation claim against his employer based on statements made in one of his performance evaluations, but the D.C. Court of Appeals held that the plaintiff consented to the publication of the statements by entering into the collective bargaining agreement.  Id. at 59-60.  In so holding, the court applied the following principles:

> In this jurisdiction, the defense of consent has been incorporated into a three part analysis. The publication of a defamatory statement is privileged if: (1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and, (3) the publication of those statements was limited to those with a legitimate interest in their content. Thus, in moving for summary judgment on the basis that the publication of the statements was privileged, the [defendants] had the burden to show that there was no dispute that [the plaintiff] consented to the publication of the evaluation, that the statements contained within the evaluation were pertinent to his work performance, and that the distribution was limited to those with a legitimate interest in the evaluation.

Id. at 59.  After analyzing all three elements, the court concluded that the "[u]ndisputed evidence support[ed] the trial court's conclusion that [the defendants] were entitled to judgment as a matter of law" because they "met the three conditions necessary to claim the defense of privilege based upon consent."  Id. at 60.

At this preliminary stage of the proceedings, the individual defendants have not met their burden of establishing the defense of consent.  Even assuming the plaintiff consented to the publication of statements about him at the Labor-Management Hearing by entering into a collective bargaining agreement, this would only satisfy the first element of the defense.  The individual defendants must also show that the statements made at the Labor-Management Hearing "were relevant to the purpose for which consent was given," and that "the publication of those statements was limited to those with a legitimate interest in their content."  Id. at 59.  The complaint alone does not reveal whether these conditions are met in this case.  Although the individual defendants may be able to satisfy all three elements of the defense at the summary judgment stage, the defense is prematurely raised in their Rule 12(b)(6) motion.

For all of these reasons, the Court will deny the defendants' motion to dismiss the plaintiff's defamation claim.

**D.      The Plaintiff's Recovery of Punitive Damages from WMATA**

WMATA moves to dismiss the plaintiff's claim for punitive damages on the ground that it is immune from punitive damages.  Defs.' Mem. at 5-6.  The plaintiff expressly concedes this point, stating that he "is well aware that WMATA is not subject to punitive damages."  Pl.'s Opp'n at 4.  WMATA's motion to dismiss the punitive damages claim therefore will be granted as conceded.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the complaint in part is granted in part and denied in part.  Specifically, the motion is granted insofar as the plaintiff's ADA claims against WMATA are dismissed with prejudice, the plaintiff's ADA and Rehabilitation Act claims against the individual defendants are dismissed with prejudice, and the

plaintiff's request for punitive damages from WMATA is dismissed with prejudice, but the

motion is denied in all other respects.

     **SO ORDERED** this 12th day of June, 2013.[4]

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.